AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)      ☐ Original   ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT

6/23/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____MMC_____ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT

6/23/25

CENTRAL DISTRICT OF CALIFORNIA
BY: _____MR_____ DEPUTY

United States of America

v.

Jorge Sierra Hernandez,

Defendant.

Case No. 2:25-MJ-03829-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of June 20, 2025 in the county of Los Angeles in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1361 | Injuring Government Property |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____/s/_____
*Complainant's signature*

Mark Clinton, Border Patrol Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:         June 23, 2025

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Pedro V. Castillo, U.S. Magistrate Judge
*Printed name and title*

AUSA Shawn Andrews x6104

## AFFIDAVIT

I, Mark Clinton, being duly sworn, declare and state as
follows:

### I.  PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal
complaint and arrest warrant against Jorge SIERRA-Hernandez
("SIERRA"), charging him with violating Title 18, United States
Code, Section 1361 (Injuring Government Property).

2.   The facts set forth in this affidavit are based upon
my personal observations, my training and experience, and
information obtained from various law enforcement personnel and
witnesses.  This affidavit is intended to show that there is
sufficient probable cause for the requested complaint and
warrant and does not purport to set forth all my knowledge of or
investigation into this matter.  Unless specifically indicated
otherwise, all conversations and statements described in this
affidavit are related in substance and in part only.

### II. BACKGROUND OF AFFIANT

3.   I am a United States Border Patrol Agent ("BPA") with
the Department of Homeland Security, Customs and Border
Protection, United States Border Patrol ("USBP"). I have been
employed as a full-time, sworn federal BPA with the USBP since
May 25, 2009, and graduated from the USBP Basic Border Patrol
Training Academy located in Artesia, New Mexico.  The Academy
curriculum covers specialized training in the Immigration and
Naturalization Act, criminal law, and statutory authority, as
well as cross-training in Title 21, United States Code, and in

Title 19, United States Code. I am currently a supervisor assigned to the El Centro Sector Intelligence Unit and have been a supervisor since 2019.

### III. STATEMENT OF PROBABLE CAUSE

4.    Based on witness interviews, my review of videos posted to social media, and my own knowledge of the investigation, I know the following:

**A.    Incident Involving SIERRA of June 13, 2025**

5.    On June 13, 2025, BPAs assigned to the Tucson Border Patrol Sector and the El Centro Border Patrol Sector were assigned to Operation At Large – an interior immigration enforcement operation based in the Los Angeles, California area and surrounding cities.  On this date, BPAs working in the city of Maywood arrested an individual who they believed was in the United States without legal authorization near 4207 Slausen Avenue.

6.    Following that arrest, as the BPAs were placing the arrestee in their Border Patrol-issued vehicle (the "BP Vehicle"), a black Jeep Wrangler bearing California license plate 9SWL196 (the "Wrangler") rapidly approached the BPAs from the rear and parked directly behind the BP Vehicle.  Then, the driver of the Wrangler began yelling obscenities and repeatedly honking his horn in apparent disapproval of the BPA's enforcement actions.

7.    After a short time, the Wrangler drove from the rear of the BP Vehicle and parked directly in front of the BP Vehicle, in an apparent attempt to prevent the BPAs inside the

2

BP Vehicle from leaving the area.  Despite the Wrangler's
apparent attempt to block the BP Vehicle, the BPA driving the BP
Vehicle maneuvered around the Wrangler and began to drive away.
As the BP Vehicle drove away, however, the Wrangler drove over a
sidewalk and once again parked directly in front of the BP
Vehicle.  Once the Wrangler stopped in front of the vehicle, the
driver of the Wrangler revved the car's engine and shouted more
obscenities toward the BPAs inside the BP Vehicle.

8.    At this point, additional BPAs responded to the scene
in their own Border Patrol-issued vehicles to assist.  Those
BPAs used their vehicles to block the Wrangler and created a
pathway of exit for the BP Vehicle.  Several of the BPAs who
responded to assist the BPAs in the BP Vehicle saw the driver of
the Wrangler and described him as a Hispanic male with a beard
who was approximately thirty to thirty-five years old.

B.    **Incident Involving SIERRA on June 20, 2025**

9.    On June 20, 2025, BPAs were conducting enforcement
operations in Bell, California.  During those operations, as a
BPA ran after a fleeing subject on Atlantic Boulevard, a fellow
BPA joined the chase inside of his Border Patrol-issued truck
(the "BP Truck").  Based on my review of a video posted to
social media, it appears that the Wrangler was initially in
front of the BP Truck as both cars drove down Atlantic
Boulevard.  According to the BPA driving the BP Truck, however,
the Wrangler began following the BP Truck on Atlantic Boulevard
a short time after the BPA initiated pursuit.  As such, I
believe it is likely the driver of the Wrangler allowed the BP

3

Truck to pass on Atlantic Boulevard, then maneuvered the Wrangler behind the BP Truck.

10.   According to the BPA driving the BP Truck, as he drove down Atlantic Boulevard, he saw the fleeing subject run across Atlantic Boulevard past the front of the BP Truck.  The BPA stopped the BP Truck to allow his partner BPA to exit the BPA Truck so his partner could pursue the fleeing subject on foot; shortly thereafter, he felt the Wrangler collide with the rear of the BP Truck.  According to the BPA driving the BP Truck, he stopped the BP Truck in a manner that should have allowed any car traveling behind him to stop safely without colliding with the BP Truck.  As such, the BPA driving the BP Truck believes that the driver of the Wrangler deliberately collided with the BP Truck to prevent BPAs from apprehending the fleeing subject.

11.   Following the collision between the Wrangler and the BP Truck, the driver of the Wrangler put the car into reverse in an apparent attempt to flee the scene.  The Wrangler was unable to reverse, however, because hooks mounted on its front bumper became lodged under the rear bumper of the BP Truck, damaging the BP Truck.  Despite this fact, the driver of the Wrangler continued to attempt to reverse the Wrangler away from the BP Truck in an apparent attempt to flee.

12.   Ultimately, Bell Police Department officers arrived on scene and identified the driver of the Wrangler as SIERRA.  BPAs on scene who had also been on scene during the above-described event in Maywood on June 13, recognized SIERRA as the person who was driving the Wrangler on that day.  Further investigation

4

showed that the Wrangler is registered to SIERRA at an address in Huntington Park.

## IV. CONCLUSION

13.  For all the reasons described above, there is probable cause to believe that SIERRA has committed a violation of Title 18, United States Code, Section 1361 (Injuring Government Property).


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 23rd day of June
2025.

_____
HON. PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE